First case this morning is People v. Potts. That's case number 4110742 for the appellant, Daniel Foltz and Pete Naylor, and for the appellant, Anastasia Peretz. Are you both going to be arguing? Our request to the court is for me to do the opening comments and then for Mr. Naylor to do the final rebuttal. That would be just fine. You may proceed. May it please the court, counsel. I want to first address, if I can, one of the issues that was raised in the state's brief with regard to jurisdiction. I believe that the second district in Reed did find that, in a very similar set of circumstances, that the appellate court can review an order by a judge denying either unsupervised on-grounds privileges or supervised off-grounds privileges. And we believe that to be subtle law in that there is not any case that we can find in the fourth district that would contradict that finding by the second district. Is it a sound decision? Should we follow it? I think it is a sound decision. I think the reason why is because if you follow that to its logical conclusion, if you say that it's not a final and appealable order because at some point the trial judge could grant those privileges, then the defendant never gets any review at all. There's never any opportunity for a reviewing court to say the judge abuses discretion or the judge in some way went against the manifest way of the evidence. Furthermore, if it's not a final and appealable order, for example, let's say that there was a petition for discharge filed. The attorney came in and said, look, we think the person's completed treatment and needs to be discharged. The court says, no, he's not to be discharged. The people from DHS say he should be discharged. If there's no way for an appellate court to review that, the person can never get out of the facility. So there has to be some mechanism for a reviewing court to say, okay, he's followed the treatment plan, he's succeeded, he needs to be either given additional privileges or released. The question for the court in my mind with regard to whether or not the trial court went against the manifest way of the evidence is that there was no testimony proffered by the state in any fashion that contradicted the findings of either the psychiatrist, the psychologist, or the forensic coordinator at Alton Mental Health Center. Each one of these people testified that this went through a series of reviews, both at the facility, at the DHS facility in Chicago, and that there were a number of people who looked at this and found that the privileges were appropriate. The court also heard testimony that there were sufficient safeguards in place for Mr. Potts to be reintegrated, at least slowly, into the community. Well, here's the problem, counsel. It's been a while, but I remember back as a trial judge dealing with these kinds of issues. And why isn't the trial court invested with the discretion to determine the weight and the persuasiveness of this testimony, even if the expert testimony, so to speak, is uncontradicted? I've listened to lots of expert witnesses in my time, and some of them are more persuasive than others to be diplomatic about it. Why am I, as a trial judge, I'd say, well, there's expert Dr. Berthel, and he's telling me all about this, but it seems to me that the basis of his opinion is not as strong as perhaps I would like. Well, I think the trial court certainly has substantial discretion in determining the weight to give to the expert testimony. Why wasn't that what happened here? The court exercised its discretion and decided, based upon the testimony it heard, that the evidence was not sufficient to warrant taking the action that the respondent seeks. We believe that the trial court has put in a very difficult position on these kinds of cases. This was a local crime in the community, and I think the judge in this case abused his discretion. I think that the evidence was very, very strong in favor of expanded privileges, particularly with regard to the fact that the testimony that came in was that, in the normal course of treatment, in moving a person from point A to point B in their recovery, there has to be some mechanism for the professionals to observe this person in the community. No, no, there only has to be that mechanism if, in the court's judgment, it can be done safely. I agree. What I'm saying is that I believe that the court went against the manifest way of the evidence and the court's discretion was such that it was against the manifest way of the evidence. That's our position. With regard to the issue of whether or not the evidence came in in such a way that it at least lended substantial credibility to expanded privileges, I would note, because I think it's important to note, that there was some discrepancy in the petition that was filed versus what came in at the trial court. At the trial, or at the hearing, and what was argued in closing argument. I want to make sure we're clear about that because it's important from my perspective that if the court does reverse the trial court's decision, that the court's fully aware of what the circumstances are at Alton Mental Health Center. Specifically, the petition said, we want unsupervised on-grounds privileges, we want supervised off-grounds privileges. Then when Dr. Patil testified and the psychologist testified, they basically said, we're not asking for unsupervised on-grounds privileges. Having said that, there were some questions at trial as to whether or not the Alton Mental Health Center was a secure facility. And I think Dr. Patil testified that the unit where Mr. Potts' house is a secure facility. Having said that, having been there myself, I know that the unsupervised on-grounds privileges entail being able to move throughout the entire facility, which is not a secure facility. So I want to correct that, that if you reverse and grant him unsupervised on-grounds privileges, it's not going to be in a secure setting. I believe that our best hope here is that the court reverse with regard to the supervised off-grounds privileges, because the testimony was that he would be slowly integrated by himself on a number of separate trips before he was put into a group setting where he'd be supervised by two forensic coordinators at the facility. Again, it's important from our perspective that the court understand that the issue for the treating physicians is that they cannot measure progress with regard to recovery if they can't put him in some minimal community setting. He has no hope of fully recovering or being found to have fully recovered if he's not at least partially transitioned into the community prior to his release. So if the court continues to deny the recommendations for expanded privileges, there is no way for Mr. Potts to ever recover. His treatment process is basically halted. And that's where we are today. And that's where we've been for a couple of years now. And that is of some concern to the psychiatrist and the psychologist and the forensic coordinator at Alton Memorial Center. So I'm asking the court to reverse the trial court's decision as it pertains to the unsupervised, I'm sorry, as it pertains to the supervised off-grounds privileges and grant those privileges so that Mr. Potts can continue his recovery. And that's our position. Thank you. Just to be clear, counsel, you said Alton is not a secure facility, correct? It is not. The building, the treatment center itself, which is just one building on the campus, is very secure. I think there's an 8- or 12-foot fence, there's barbed wire. But the actual unsupervised off-grounds privileges, which came as a shock to me when I inquired while I was there, would be that he's allowed to roam the entire campus. This entire campus is, there's not even a checkpoint when you come in. The only requirement would be is that every 15 minutes he has to walk back to the secure facility and let them know he's still there. And that would be of significant concern to me, even as his attorney. Thank you very much. Ms. Brooks? May it please the Court and counsel, my name is Anastasia Brooks, and I represent the people in this case. First of all, a threshold question in every case is the appellate court's jurisdiction to review an order  And here, the Reid case, which would be on point, except for the fact that it's not from this district and would not be binding on this court. And of course the state respectfully disagrees with the Reid opinion's decision that this type of order is final and appealable. The question is when an order terminates litigation between the parties. And in this case, the litigation is not terminated because the case remains ongoing until the final discharge. So this is similar to the type of juvenile neglect, permanency, and custody type issues. But in that situation, the interlocutory orders that are entered are subject to an actual rule of appeal that permits appeal of interlocutory orders respecting cases such as juvenile neglect and termination of parental rights. However, there's no identified rule that permits the interlocutory appeal of orders such as the denial of petition for privileges. Because the petition for privilege does not encompass the determination of any rights that terminates litigation. And if this were actually a civil appeal, it would have to also comply with requirements of Supreme Court Rule 304A1, which would require appealability finding by the trial court for an order that does not resolve the entire litigation. But isn't Mr. Fultz's point then correct that under the scenarios he described, it's possible, except in your view, that a ruling by the court might never be reviewed or reviewable. And the situation could continue seemingly forever without this court ever having the opportunity to determine whether what occurred at the trial level was correct. Well, Your Honor, it responded in a couple of ways. The first is that this court's not the only avenue of relief for defendants such as Mr. Potts. The state's brief cited the possibility of defendants filing a motion for supervisory order with the Supreme Court of Illinois. Well, those are real tough. And I suspect the Supreme Court views them as exceptional and extraordinary remedies, certainly not something which I suppose if they were to have a choice, let's see, is the federal courts routinely going to be hearing these cases or are we going to do it on supervisory order? I don't think the Supreme Court would be opting for curtain two. Well, except for the fact that a situation where if the defendant's liberty is an interest and he believes that he made a showing, for example, of being entitled to discharge, for example, if the rules had not provided for an appeal of that order, then the defendant's liberty interest coupled with the inability to appeal under the existing Supreme Court rules would create the sort of extraordinary situation that might warrant a motion for supervisory order. In this situation, it's more of a routine, temporary type situation where there's only a treatment plan for a certain amount of time and it's dealing with the question of privileges under that treatment plan, so it's a much more narrow scope. So, of course, the availability of Supreme Court supervisory order in this circumstance would be perhaps less attainable than a situation where a defendant would be entitled to discharge under an evidentiary showing. But, however, the state's position is still, though, that what this court should do is follow the rules as written and not disregard the rules as written and try to do what the Reed Court is and basically disregard the rules because the defendant appears to have no other avenue of relief. I interrupted you and I don't believe I gave you an opportunity to cite other alternatives, I apologize. Other than the supervisory order, are there other alternative actions you believe that the defendant could take? Well, a mandamus petition, for example, would not apply if it were a discretionary issue, so that would not be available here, particularly for the reasons the state cites later, as it not being something the defendant would be entitled to as a matter of right anyway. So I can't really think of any other avenue of compelling the trial court to grant privileges. What about if the shoe was on the other foot and a trial judge ordered a defendant, or, excuse me, a respondent released and the state felt he was a danger to the public? What right of appeal would the state have? Well, the state has certainly considered that possibility because the rule would apply the same to the state if it were trying to appeal an adverse order that it did not approve of. So as long as the rule does not apply for what is, in essence, this is an interlocutory order, although the Reed Court call it final, the state disagrees with that determination, but then you're right, Your Honor, the implication would be that the state, without a rule that would permit interlocutory appeal of these types of orders, would also bar the state from taking an interlocutory appeal of these types of orders if it were going the other way. So that is definitely an implication. However, the correct resolution for this type of issue is to perhaps recommend to the Supreme Court of Illinois to adopt some sort of mechanism, if it were warranted, for some sort of interlocutory appeal of these orders. Now, of course, a related question is whether this is even revealable for error under the statute, which is the 5-2-4 subsection B. If it's not even revealable for error, then under the state's interpretation of that statute, which I'll be a contrary to Cross, but I'll get to that in a minute. But the point is, though, that if it's not even revealable for error, then what would be the necessity for granting appeal as an avenue for the defendant's state review if it's not even revealable? Do you know if the state made this argument in the last appeal on POTS? Because this is the second time we've heard it, at least. Your Honor, I don't remember exactly what was raised in POTS, although from my recollection of the actual appeals, I don't know that jurisdiction was explicitly addressed, although it's always a threshold question in every appeal. So whether it was raised by the parties or not, this Court always has the duty, sua sponte, of considering its own jurisdiction. And of course, the state cites in this brief here the duties of the appealing party in this jurisdictional statement to advocate for a basis for its appeal. And in here, this Court does not have a duty to do the job of the defendant's attorney for him and argue on his behalf what would be the appropriate basis for the appeal, because the failure to adequately brief the basis of jurisdiction is the basis for forfeiture, and therefore if the basis for jurisdiction is not clear, the appeal would be subject to dismissal. How long has the Reed case been out there, do you know? The Reed case was from 1984. So I'm not sure, I'm not aware of how many cases like this have been appealed in the last 20 some years since Reed was decided. But even though that there has been no contrary authority to Reed, it doesn't necessarily mean that Reed was correctly decided. Of course, it's a different district of the appellate court. This Court's not bound to follow Reed's reasoning, particularly if this Court deemed it to be wrongly decided or poorly reasoned. But in 28 years since Reed, no court has held otherwise in a published opinion. At this stage I'm not aware of any other opinion on that, because the State doesn't have any contrary authority to decide other than by going as an analogy to cases such as Curtis v. which dealt with permanency hearings, and the black letter law regarding what is the final and appealable order. And so that what is final and appealable has to terminate the litigation between the parties on the merits. And here there's no termination of litigation. It's just simply in the nature of a parent, for example, petitioning for custody of a child in the context of the juvenile neglect case. If that petition is denied, the case still remains pending. Although it's an important issue, it doesn't make it necessarily appealable. And so that's why there has to be an actual rule established by the Supreme Court of Illinois to review these types of cases in the appellate court. And absent such a rule, the defendant hasn't identified, there's no basis for this Court to act. So without power to address this order without an actual rule of appealability. So for that reason, there's no jurisdiction, the appeal should be dismissed. With respect to reviewability, Stoffel case held it cannot be error for a trial court to fail to do something it is not required to do. However, in the Cross case decided that the trial court must base its decision to grant past privileges, and here's the language from the statute on what is appropriate and necessary to reasonably assure the defendant's satisfactory progress in treatment and the safety of the defendant and others. The problem is that that language from subsection B actually says, it didn't follow the statutory language. What it says is the report may also include unsupervised on grounds and off grounds privileges, but only where such privileges have been approved by specific court order, which order may include such conditions. And then there's the language that the cross court relied on. So really what the statute says, and this is 5-2-4 subsection B, it says that the trial court may approve this and may include the conditions. It doesn't say the trial court must do so, and it doesn't say that the trial court must base its decision on any legal standard. So it's not a situation where it's here what the defendant is trying to say is, this is the legal standard, this is the evidence, the trial court's decision was against manifest weight of the evidence because the opposite result was apparent. Applying those facts to the established legal standard at issue. That is the typical case. This is not the typical case. This is the case where there is no governing legal standard. The trial court's not required to do anything. So therefore it's not the error for the trial court to fail to grant privileges. It's not subject to review. And that's what the situation is that why the lack of a provision for appeal of these type of orders is not necessary because these type of orders are not even reviewable when there is the denial of privileges. And so the state respectfully requests this court to disagree with the cross-opinions decision that the trial court has to base its decision on some sort of standard drawn from the language of the statute. The language itself, if properly read and interpreted, does not require any sort of finding to be made in the defendant's favor. And with respect to the merits, the trial court can assess on its own whether the defendant has, under the cross-opinion, for example, the defendant has the burden in this context, clearing convincing evidence. And even if there's no contrary expert opinion, the trial court can make a decision on its own whether the defendant has met his burden of showing by clearing convincing evidence whatever standard is asserted in the cross-case. And here the situation is that after a few visits off grounds, the ratio from staff to patient changes from two staff to one patient and becomes two staff to five patients. And these are unarmed staff members. They don't have anything other than a cell phone to call for help. So the trial court then has enough of an ability to decide on its own that this presents an unacceptable elopement risk for the situation of when this develops eventually to the two staff to five patient ratio. Now, the defendant might say, well. Do you agree the experts testified that this was the next step for recovery for Mr. Potts? Even though they testified that? That is what they testified to. Right, Your Honor. Mr. Fultz argued that there's not going to be any hope for recovery if we don't allow this next step. And I guess my question to you would be what more could Mr. Potts, through his counsel, have presented to the trial court to obtain relief to get the next step for treatment? Well, I understand the defendant's argument is that there's no hope for recovery without this additional step. But he needs a testimony to that effect. And I don't recall, and it may be wrong whether the record actually specifically said if we don't grant this petition, he's going to be stuck and not ever have any hope for discharge. And I'm not sure that that's what the testimony was directly to that effect. If the record doesn't support that argument, then that argument's not valid. But your other question, your point is still, what if the record does support that? You're right, Your Honor. I thought you were going there. If the record does support that, then it would seem, though, that he would need some sort of privilege that would help him progress. But yet, what was being, the specific recommendation which was granted, which was sought here by the treatment team, involved this two-staff to five-patient ratio. They did not say that they would be willing and able to grant the defendant privileges of a different sort, which would be maybe more than two staff members, or just one patient ad infinitum, or for a year or two years, five years, however long it would be necessary for him to progress in treatment. They did not say that they were willing or able to do that for him. What they proposed was a specific treatment plan, and the trial court looked at that treatment plan and recognized that after a few visits, it expanded to five patients. And so that's not acceptable. So if something different would help the defendant, then they've got to come up with a different treatment plan that they're willing and able to do that would pass muster under the trial court. That has not happened yet, and for that reason, this court should not do anything other than affirm that basis if there were jurisdiction for this court to do so. Because they would have to come up with an additional treatment plan in the future. Like maybe an ankle bracelet so that if he did escape, he could be located fairly quickly so that he didn't miss any of his medication? Is that what you were talking about? Well, these... Just for an example? The statute says may include such conditions. So if this court were to interpret the statute to mandate the trial court to grant privileges and impose the conditions, which that's not what the state's arguing. The state says the trial court doesn't have to do this. If this court disagrees and says that the trial court has to order some sort of privileges and impose those conditions, well, then that would be essentially what the court could do if that were the court's interpretation of the statute and if there were jurisdiction to do so. If Your Honor said, here has to be the staff ratio or here has to be the other additional conditions, that would be sufficient to mandate the safety of the defendant and others. So if that were the case, then this court could do that, but the state's position is the statute does not support that sort of resolution of the appeal. So what the defendant should do is have the treatment team come up with a different recommendation, perhaps with more protections, and if that were granted, then the state might not be able to appeal it without the actual rule of appealability. Unless the court disagrees and shows that these sorts of cases are in fact appealable without such a rule. So for those reasons, the state requests this court to dismiss the appeal or any alternative firm. Thank you, Your Honors. Thank you, Ms. Brooks. Mr. Nader on rebuttal. May it please the Court. Counsel. I'll try to be brief here and try to be pointed. I think Justice Turner's line of questioning was spot on with respect to what my rebuttal intended to be. Not only do I think that we believe that People v. Reed confers jurisdiction persuasively, albeit for this court, I think this factual scenario is ideal for that analysis. Mr. Potts has completed all of the steps in his treatment, as the record supports. Mr. Potts has stayed consistent with his medication, as the record will support. They have found the right combination of medications for Mr. Potts, as the record will support. This has continued for some time, as the record supports. Mr. Potts has come on the petition for these same privileges as the next step in his treatment plan several times at this point, and the doctors have not suggested any other option. At this point, the next step in his treatment is to get him out of the building in some way, and the testimony of all of the experts and the testimony of the staff at the facility is that the risk of elopement is minimal, if at all. As such, his liberty is at stake. Without the right of Mr. Potts to appeal to this court, what will happen is he will continue to go back before Judge Kavanaugh and continue to have these privileges denied, and here's why. The concerns that Judge Kavanaugh expressed in his written opinion were not that the doctors were not credible, were not that the witnesses didn't provide sufficient testimony. The sole concern that Judge Kavanaugh proffered in his opinion was that there is a minimal chance that Mr. Potts will go off of his medication. That will never change. Mr. Potts will be on this medication for the rest of his life. His doctors testified it's the right medication. They testified that he's given every indication that he'll stay on that medication, more so than he ever has before, and at this point, all they're asking is that he have supervised off-grounds privileges. We've talked some. We've made this case analogous to a petition for release. We've made this case analogous to child visits and family law matters, but what we're talking about here is the next step in treatment. It's long been held by the courts in Illinois and the court in Harrison, the NGRI, not guilty verdicts. You're confined for the purpose of treatment and protection, not punishment. If he cannot continue with his treatment, he's being punished, not treated. Towards the end of the state's argument, Justice Turner suggested that there might be some restrictions and that Judge Kavanaugh would have had the opportunity to order an ankle bracelet or a one-on-one supervised off-grounds privileges. Again, these petitions have been before Judge Kavanaugh several times, and that opportunity has not been taken. Judge Kavanaugh has issued several opinions, all of which reference the concern that Mr. Potts might go off his medication, and his doctors are not concerned about that. While we concede that it is Mr. Potts' burden to present the evidence, all he can do is present the evidence of his treating physicians and the staff at the facility. What about Ms. Brooks' argument, though, that he could be asking for more... In their plan, he could ask the doctors to provide for more security. So, for example, he'd be the only one going off-grounds with maybe four people. If that's available to him. He, right now, is in a position where he's in the facility and following all of the doctors' orders. I think that's a good position, and if that's an option, then certainly that's something that would be pursued. We were not involved in the case at that point in time, but I would say that what he's done is said, Doc, tell me what I need to do, and every day he's done it. Tell me what your procedures are at the Alton Mental Health Facility, whether the Alton Mental Health Facility even has the staff or the man-hours or the funding to do monitor and ankle bracelets. Right, but let's say they don't, but the judge feels that's what's necessary in order for the public to remain safe. Then I think the judge could have ordered it, absolutely. But if they don't have the manpower to provide, then he's not going to get it, right? Right. And I think that that's something that the trial court has discretion to dig into. I think what Mr. Potts' petitions for privileges are limited to are the petitions for privileges as recommended by his physicians, who are there on the stand to be questioned, to be cross-examined by the state. None of these restrictions were suggested by the state. Some of these are coming up now that Mr. Potts could have come in and said... Right, but it's not the state's place to have to suggest them. Sure. Would you agree with that? I would agree. I would agree. And to try to stay in my five minutes, I would wrap that up by saying I think this record supports and the prior records for Mr. Potts support that he has done everything that he needs to do to comply. I think that we can talk about him needing an ankle bracelet. We can talk about maybe there needing to be one-on-one supervision. But that wasn't the testimony of the treating physicians or the staff. The treating physicians didn't say, we'd be a little more comfortable if he had one-on-one. The treating physicians say, we're confident he's not going to go off of his meds. He's taking part in all the classes. He's staying consistent. We like where he's going. We are comfortable with him going off grounds with the current procedures that are in place. Okay, thank you. Thank you. Mr. Nandy, we're out of time. The case is submitted and the court stands in...